E-FILED
Friday, 08 February, 2013  03:20:50 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| **KELLY ELIZABETH KATHRENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 10-CV-2232** |
| **v.** | ) | |
| | ) | |
| **UNIVERSITY OF ILLINOIS,** | ) | |
| **and** | ) | |
| **UNIVERSITY OF ILLINOIS BOARD** | ) | |
| **OF TRUSTEES,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPINION

This case is an employment discrimination case where the Plaintiff claims she was subjected to sexual harassment, sex discrimination, and retaliation. The case is before the court on Defendants' Motion for Summary Judgment solely on Count III (#44). This court has reviewed the arguments of the parties and the documents provided, including extensive deposition transcripts. Following this careful consideration, Defendants' Motion (#44) is GRANTED.

## Jurisdiction

This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff brings her action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and the Civil Rights Act of 1991.

- 1 -

## Background[1]

Plaintiff Kelly Kathrens was a female employed by Defendant at Abbot Power Plant. (#1 ("Compl.") ¶¶ 6-7.) Plaintiff began working for Defendant in 1993. (Compl. ¶ 14). Plaintiff's supervisor at all relevant times was Michael J. Larson. Larson is currently the Director of Utilities Operations. (Compl. ¶ 10). Robert Roman was the chief utility plant operating engineer at the power plant. (#44 ¶ 4).

After a four-year absence from her job, Plaintiff returned to work in March 2008. (#45-1, "Kathrens Dep.", p. 83). After returning to work, management assigned Plaintiff to job training to retrain her on the new equipment, since there were changes to polices, practices, and operations during her period of leave. (#46-1, "Roman Dep.", p. 135). Before Plaintiff took her leave of absence, a locker room was used only by females. There was no lock on the door at that time. Sometime after she left, the locker room was converted to unisex locker room. A lock was added when it was converted to a unisex room so as to prevent entry by individuals of the opposite sex while it was occupied. (#44-1, "Larson Dep.", p.79). When Plaintiff returned to work in March 2008, she complained to management that the locker room was unisex. (Kathrens Dep. 35). The locker room was changed from a unisex room to a women's room. (Roman Dep. 75).

On March 24, 2008, Plaintiff received a pre-disciplinary letter (PDL #1). (Kathrens Dep., 87, Roman Dep. 75-76). The letter indicates, and Roman attests, that the meeting was to discuss alleged unauthorized and unexcused absences on March 3 through March 7, 2008. (Roman Dep. 75-76, Roman Dep. Exh. 4). A pre-disciplinary meeting was held on March 31, 2008. No disciplinary action was taken at that meeting. (Kathrens Dep. 89). In April 2008,

---

[1] Facts are taken from Defendants' Statement of Uncontested Facts and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts when supported by the provided exhibits, or, if the exhibits were not complete, not contested or otherwise opposed.

the lock was removed from the (now-women's) locker room. (Larson Dep. 79).  Plaintiff spoke with Chad Martinez about filing a sexual harassment complaint against Larson and Roman (Kathrens Dep., 36.) By the end of April 2008, the lock on the locker room was replaced. (Kathrens Dep. 90).

On May 5, 2008, Plaintiff received another pre-disciplinary letter (PDL #2a). (Kathrens Dep. 91.) The letter indicates, and Roman attests, that a meeting was scheduled for May 12, 2008, to discuss irregularities in Plaintiff's attendance and timekeeping. (Roman Dep. 92; Roman Dep. Exh. 4). Before that meeting was held, on May 9, 2008, Plaintiff received a follow-up letter rescinding the prior letter (PDL #2a). The new letter indicated that, after additional investigation, management concluded that Plaintiff had conducted herself in an appropriate manner vis-à-vis her Lead Operating Engineer, Bill Brine, regarding her absence. The letter also indicated that Roman believed that Plaintiff had been acting in good faith, and that the perceived irregularities had instead been the result of miscommunication over policies and procedures that had been changed during her absence. (Roman Dep. Exh. 4). While Plaintiff was on leave, the procedure for taking sick leave changed. While the previous procedure of calling the lead operating engineer on duty stayed the same, an additional "call-in" procedure was implemented. The additional procedure required an employee who wanted to take sick leave to also inform a supervisor. (Larson Dep. 69; Roman Dep. 70). The new procedure was implemented to ensure timely and accurate reporting to upper management. (Roman Dep. 70). The "call-in" procedure was also required for a male employee at Abbott Power Plant due to his attendance issues. (Larson Dep. 70-71; Roman Dep. 72).

At some time between May 2008 and July 2009, Plaintiff found pornography in the women's locker room at a location that was widely known to be where she commonly placed

- 3 -

her belongings. (Kathrens Dep. 123). Ricki Broom, a coworker employed as a utility operator, confirmed that pornography could be readily found at the Abbot Power Plant while Plaintiff was employed there. (#47-1, "Broom Dep." 6, 82). Around this time, a sign was hung on the control room door that said "AND NO GIRLS ALLOWED". (#47-3, "Brine Dep." 56; Roman Dep. Exh 4.).

Plaintiff testified that in the summer of 2009, she was physically assaulted and sexually harassed by Broom. (Compl. ¶¶ 20). There were a series of verbal harassment incidents. (Broom Dep. 49-50, 52, 53, 54-55). Additionally, there was an incident that involved prolonged unwanted clothed contact, although the extent and sexual nature of the touching is disputed. Plaintiff testified that Broom shoved her up against a counter and simulated sexual intercourse with her, against her will. (Kathrens Dep. 24). The incident was corroborated by Brine. Brine stated that Plaintiff pushed Broom away, appeared to be in pain, and that other workers in the control room had observed the incident. (Brine Dep. 6-7, 15-16, 19, 21, 23-24). Broom admits that an incident occurred but that the contact was accidental and fleeting. (Broom Dep. 23-33).

Plaintiff testified that in December 2009, her co-workers started slapping and grabbing at her rear end. (Kathrens Dep. 39-40; 73). She could not identify who did it, because they traveled in packs and did it when her back was turned. (Kathrens Dep. 74). Plaintiff states that when she reported the incidents to Larson, Larson did nothing. (Kathrens Dep. 39). On July 24, 2009, a pre-disciplinary letter (PDL #2b) was sent Plaintiff to discuss an alleged incident in which another University employee accused Plaintiff of verbal assault. (Roman Dep. 112; Roman Dep. Exh. 4).

On July 29, 2009, a meeting was held to discuss the alleged verbal assault incident. Plaintiff was not permitted to defend herself, to cross-examine her accuser, to provide witnesses in her favor, or to cross-examine a purported witness of the event. Plaintiff denied that incident occurred. (Roman Dep. 114). Following the July 29, 2009 meeting, a Work Performance Reminder letter (WPR #1) was issued to Plaintiff regarding the alleged verbal assault. This letter indicated that Plaintiff was expected to improve her behavior on campus. (Roman Dep. Exh. 4).

On September 23, 2009, a pre-disciplinary letter (PDL #3) was sent to Plaintiff to discuss work absences between September 17 and September 21, 2009. (Roman Dep. 117). On October 6, 2009, a revised pre-disciplinary notice (PDL #3) was sent to Plaintiff, indicating that, in addition to the work absences, the meeting would also discuss alleged falsification of FMLA paperwork. (Roman Dep. 118, Roman Dep. Exh. 4). No evidence or testimony provided to this court could be found indicating whether this meeting was held, and if it was what the outcome was.

On January 7, 2010,[2] a pre-disciplinary letter (PDL #4) was sent to Plaintiff regarding her alleged failure to follow proper call-in procedure. (Roman Dep. Exh. 4). On January 12, 2010, a pre-disciplinary meeting was held to discuss absences and call-in procedures. Plaintiff was given a Written Reminder (WR #1) for her failure to call in and report her absences on December 12, 13, and 14 of 2009; her failure to follow call-in procedure on January 2, 7, and 8 of 2010; and her unauthorized absences on January 2, 7, and 8 of 2010.

---

[2] This letter is dated January 7, 2009, and indicates that a meeting was scheduled for January 12, 2009. However, the letter further noted that it was in regard to Plaintiff's alleged failure to follow call-in procedure on December 12-15, 2009, and the signature is dated 1/7/2010. The court therefore assumes that the January 2009 dates were a typographical error and should have been 2010.

(Roman Dep. Exh. 4). Plaintiff testified that she did not receive any notice of pre-disciplinary meetings on January 12, 2010, and June 24, 2011. (Kathrens Dep., 65-67).

On January 13, 2010, a letter was sent to Plaintiff indicating that her name had been removed from all registers, Training Program lists, and the transfer list. The letter further indicates that she was therefore not eligible to apply for exams or placement on a transfer list until she maintained a discipline-free record for one year. (Roman Dep. Exh. 4).

According to University policy, an employee is permitted only two Work Performance Reminders over six months before being subject to a Written Reminder. After one Written Reminder in twelve months, an employee is subject to Decision-Making Leave. After that, the employee may be discharged. (Roman Dep. Exh. 2).

Plaintiff left the workplace sometime in July 2011 because she was "terrified to go back to work" and has not returned. (Kathrens Dep. 112-113).

## Analysis

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986*); Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir.

2010). A factual dispute is "genuine" only if a reasonable jury could find for either party.

*SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Although Plaintiff brings three counts, the first being a claim of sexual harassment and

hostile work environment pursuant to Title VII and the second being sex discrimination pursuant

to Title VII, Defendants have moved for summary judgment only on her third count, a claim of

retaliation pursuant to Title VII. The motion at bar only challenges her claim of *retaliation*.

Title VII prohibits retaliating against an employee "because he has opposed any practice

made an unlawful employment practice by this subchapter, or because he has made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under

this subchapter." 42 U.S.C. § 2000e–3(a). A plaintiff may establish retaliation under a direct

method or an indirect method. *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002).


**I. Retaliation under the indirect method**

The indirect, or burden-shifting method "applies the familiar *McDonnell Douglas*

framework to create a presumption of discrimination or retaliation in the absence of any direct or

circumstantial evidence." *Volovsek v. Wisconsin Dept. of Agr., Trade & Consumer Prot.*, 344

F.3d 680, 692 (7th Cir. 2003) (internal citation omitted). Before any burden-shifting occurs,

however, the plaintiff must first establish her prima facie case by demonstrating that "1) she is a

member of a protected class (or performed the protected act of filing a complaint), 2) she is

qualified for the position or, if already employed, has met the defendant's legitimate work

expectations, 3) the defendant took adverse employment action against her and 4) the defendants

treated similarly situated employees outside of the protected class (or who did not complain)

more favorably." *Id. See also Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 902 (7th Cir. 2006) (noting that the "[indirect] method of establishing a prima facie case requires proof both of similarly situated employees and of the plaintiff's performing his job satisfactorily."). Here, Plaintiff cannot argue the indirect method as she does not propose any similarly situated employee who was treated more favorably.

## II. Retaliation under the direct method

To establish retaliation under the direct method, a plaintiff must present evidence, direct or circumstantial, showing that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) a causal connection exists between the two. *Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012). While it appears (and it is neither opposed nor contested) that Plaintiff engaged in the statutorily protected activity of opposing sex discrimination by reporting various incidents, and an argument could be made that she had suffered materially adverse actions, she fails to demonstrate a causal connection between the two.

### A. Materially adverse action

Defendants argue that Plaintiff cannot prevail on Count III because she did not suffer a "materially adverse employment action". Defendants have misread the case law. While a discrimination claim requires a "materially adverse *employment* action", a retaliation claim requires only that the plaintiff suffered a "materially adverse action". *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) ("An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm

- 8 -

*outside* the workplace.") An actionable Title VII retaliation claim does not require an adverse *employment* action. *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745-46 (7th Cir. 2002); *Whigum v. Keller Crescent Co.*, 260 F. App'x 910, 913 (7th Cir. 2008). Although Plaintiff has testified that she suffered from two forms of adverse actions, consisting of employment actions and sustained and persistent harassment, she does not suggest that the harassment was, *itself*, in retaliation for engaging in protected activity. (It is readily conceivable that the "No Girls Allowed" sign, the carefully-placed pornography, the repeated comments and harassment, and the unwanted contact were in retaliation for threatening to file a sexual harassment complaint.) But Plaintiff does not allege as much, and besides, those acts would be subsumed within her other claims.

Instead, Plaintiff testified that she was subjected to adverse employment actions in retaliation for her complaining about the unisex locker room, complaining about being sexually harassed in the workplace, and threatening to file a sexual harassment complaint. Regarding the degree of adverse treatment that would rise to the level of being "material", the anti-retaliation provision does not protect an individual from all retaliation, but from retaliation that produces an injury or harm. To be materially adverse, the challenged action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal editing marks omitted). This is a less stringent test than that required for a direct discrimination charge. *Herrnreiter*, 315 F.3d at 746. Plaintiff testified that she received four pre-disciplinary letters and hearings, and one Written Reminder. According to an exhibit provided by Defendants, an employee is permitted only one Written Reminder in twelve months before being subject to Decision-Making Leave, whereupon an employee may be discharged. Further, management placed Plaintiff on a status that made her ineligible to apply for

exams or placement on a transfer list for a year. A written warning without any change in the terms or conditions of employment does not normally constitute an adverse *employment* action. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009). However, when allegedly done in retaliation, a written warning could be an attempt to deter an individual from filing a discrimination complaint if doing so would be followed by the highly probable possibility of discipline for activities long forgotten. *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 665 (7th Cir. 2011). Furthermore, Plaintiff was barred from applying for exams or transfer, which is an employment-related adverse action.

In the alternative, Plaintiff also argues that she was constructively discharged because her working conditions were so bad in July 2011 that she was "terrified to go back to work" and has not returned since. She testified that other employees slapped her and grabbed her rear end, and when she complained, her manager, Larson, would not address the issue, told her to call the police, and told her that the University would fire her for fighting back. Constructive discharge occurs when "the employer has made the job unbearable for the employee." *Herrnreiter*, 315 F.3d at 745. "It also includes cases of harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee." *Id.* Defendants argue that Plaintiff cannot have been constructively discharged because her concerns were subjective. But this is a debate over whether a "reasonable employee" would find her working conditions untenable. This court, construing all evidence in the light most favorable to Plaintiff, therefore cannot grant summary judgment on that basis. Thus, for the purpose of this motion, the court presumes that Plaintiff was subjected to at least one materially adverse action.

*B. Causal connection*

Last, Plaintiff must draw a causal connection between her protected activity and the materially adverse action or actions. Plaintiff argues that the pre-disciplinary meetings, the Work Performance Reminder, and the Written Reminder were all intended to discourage her from pursuing her sex discrimination claim or to retaliate for complaining about the alleged sexual harassment incidents. In the direct method, Plaintiff may present evidence of causation via "an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')", or she may present "a convincing mosaic of circumstantial evidence that would permit the same inference without the employer's admission." *Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Davis v. Con-Way Transp. Cent. Express, Inc., 368 F.3d 776, 783 (7th Cir. 2004)*. Given the difficulty and rarity of the former, it is not surprising that she has opted for the latter method.

The "convincing mosaic" approach to the direct method is similar to the indirect method, except that there is a more flexibility. *Coleman*, 667 F.3d at 860, fn. 8; *see also Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2008) ("[U]nder the indirect method of proof, a plaintiff must produce evidence of how the employer treats similarly situated employees . . . [while] the direct method of proof imposes no such constraints."). There are three types of circumstantial evidence available to a plaintiff using the "convincing mosaic" approach. The first is "suspicious timing, ambiguous statements oral or written, and other bits and pieces from which an inference of retaliatory intent might be drawn"; the second, "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently"; and the third, "evidence that the employer offered a pretextual reason for an adverse employment action." *Coleman*, 667 F.3d at 860 (7th Cir. 2012) (internal editing marks and citations omitted.)

"Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together." *Id.*

Here, Plaintiff argues only suspicious timing, and does not present any evidence that a similarly situated coworker outside of her protected class received more favorable treatment, or that her absenteeism was merely a pretext. *See, e.g.*, *Stalter v. Wal-Mart Stores, Inc.*, 195 F.3d 285, 290 (7th Cir. 1999) (noting that providing a rationale of theft for discharging an employee when all he did was eat a few chips out of an open bag, and the owner of the bag did not object, did not pass the straight-face test). Defendants argue that each of Plaintiff's meetings was called on account of her unplanned absences or noncompliance with absentee procedures. Further, those meetings were all called in reasonably close proximity to Plaintiff's purported absences. The meeting on March 31, 2008, was to discuss absences on March 3, 4, 5, 6, and 7, 2008. The aborted meeting scheduled for May 12, 2008, was to discuss purported attendance irregularities on April 29 and 30, and May 1, 2008 (although as discussed earlier, this meeting was cancelled after further inquiry revealed the basis was miscommunication). The meeting on July 29, 2009 and subsequent Work Performance Reminder issued on August 20, 2009, were in regard to the verbal assault that purportedly occurred on July 21, 2009. The September 29, 2009 meeting, rescheduled to October 12, 2009 was to discuss absences on September 17, 18, 19, 20, and 21, 2009. The January 12, 2010 meeting and subsequent Written Reminder were to discuss failure to follow call-in procedure on December 12, 13, 14, and 15, 2010. Plaintiff does not deny Defendants' allegations about her absenteeism.

As this court "does not sit as a super-personnel department that reexamines an entity's business decisions," *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986), the only

way for Plaintiff to rebut Defendants' claim is to show that those negative evaluations were mere

pretext. And the way that she could do that is by raising a genuine issue "(1) that the proffered

reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his

discharge, *or* (3) that they were insufficient to motivate discharge." *Silverman v. Bd. of Educ. of

City of Chicago*, 637 F.3d 729, 738 (7th Cir. 2011). Plaintiff does not argue that Defendants'

proffered reasons were mere pretext. On the contrary, a "long history of absenteeism negates any

inference that [a disciplinary action relative to the absenteeism] was retaliatory." *Pafford v.

Herman*, 148 F.3d 658, 672 (7th Cir. 1998). Therefore, Plaintiff has failed present any evidence

that Defendants' disciplinary actions were motivated by anything other than a genuine belief that

she had flouted the University's procedures policies.

In order to survive summary judgment, Plaintiff's "assembled evidence must point

directly to a discriminatory reason for the employer's action." *Davis v. Time Warner Cable of Se.

Wisconsin, L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). The relationship between Plaintiff's alleged

threats to file a sexual harassment claim, and her subsequent disciplinary actions are so tenuous

that summary judgment for Defendants cannot be avoided. *See Gates v. Caterpillar, Inc.*, 513

F.3d 680, 686-87 (7th Cir. 2008). Because Plaintiff does not argue that the disciplinary actions

against her were not caused by her absenteeism, she cannot sustain her burden of showing that

Defendant's rationale of absenteeism and noncompliance with call-in procedures were a pretext

for retaliation. Because she cannot demonstrate that there was any pretext, she cannot make a

connection between her seeking to file a sexual harassment claim and those materially adverse

actions. Accordingly, she cannot resist summary judgment against her on her claim of retaliation.

IT IS THEREFORE ORDERED THAT:

(1)  Defendants' Motion for Summary Judgment on Count III (#44) is GRANTED.

(2)  Due to a criminal jury trial with a speedy trial demand set to commence on February
25, 2013 and likely to continue into the week of March 4, 2013, the jury trial in this
matter set for March 4, 2013 at 9:00 a.m. is VACATED.   Accordingly, the final
pretrial conference set for February 15, 2013, at 9:30 AM is CONVERTED to a status
conference by telephone.  Counsel should advise the Court of a telephone number
where they can be reached for the status conference.

ENTERED this 8th day of February, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE